IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Robert Payne, )<br>                        )<br>                    Plaintiff,    )<br>                        )<br>        vs.              )<br>                        )<br>CCDC Jailer C. Fennell, Chief Jailer  )<br>Lucas, Charleston County,    )<br>                        )<br>                    Defendants.  )<br>                        ) | Civil Action No. 6:11-2011-DCN-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the *pro se* plaintiff's motions for preliminary injunction (docs. 40, 42, 47, 51). The plaintiff, a pretrial detainee at the Charleston County Detention Center ("CCDC"), alleges the prison conditions at the CCDC violate his constitutional rights.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The plaintiff is currently confined at the CCDC following his May 29, 2011, arrest for discharging a firearm, disorderly conduct, public intoxication, and indecent exposure. The plaintiff is currently pursuing four separate federal lawsuits against the CCDC and its employees, and he has filed numerous motions for preliminary injunction.

"[A] preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir.1981). To obtain a preliminary injunction, the plaintiff must demonstrate: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council., Inc.*, 555 U.S. 7, 20 (2008); *see Scott v.*

*Padula*, C.A. No. 0:08-3240-HFF-PJG, 2009 WL 2579464, at *1 (D.S.C. August 18, 2009) (slip copy) (applying *Winter* standard and noting that the *Blackwelder Furniture Co. v. Seling Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977) balance-of-hardship test no longer applies). *See Neiswender v. Bank of America*, No. 09-2595, 2009 WL 1834406, at *1 (N.D. Cal. June 23, 2009) ("A request for a temporary restraining order is governed by the same general standards that govern the issuance of a preliminary injunction.").

In his first motion (doc. 40), the plaintiff asks that the court order the defendants to provide him with a "therapeutic diet for cancer." The undersigned addressed this same issue in a Report and Recommendation (doc. 32) entered on November 8, 2011, with regard to the plaintiff's previous motion for temporary restraining order. For the same reasons cited in that report, this court recommends the motion for preliminary injunction (doc. 40) be denied.

In his next motion for preliminary injunction (doc. 42), the plaintiff states that defendant Lucas "confiscated the entire jail recreational reading library in July 2011 to make a computer inventory so that inmates could check books out on the kiosk." The plaintiff asks that the court issue an injunction requiring the defendants "to return all confiscated books."

The defendants responded to the motion stating that the CCDC contains a centralized library that supports the entire jail. For the individual housing units (i.e. cell blocks), the CCDC provides a "book cart" with books that prisoners can check-out. These book carts are periodically removed from the individual housing units to replace damaged books or to switch out books to provide new reading material for the inmates. Defendant Lucas testified in his affidavit that at no time have the book carts or the centralized library been "confiscated" as the plaintiff claims (Mitchell Lucas aff. ¶¶ 5-9).

The plaintiff has not alleged, nor can he allege, that he will suffer irreparable harm if the court does not grant his motion. He is not making a constitutional claim of lack of access to the courts in this motion, but is rather making allegations regarding the "recreational library." The plaintiff does have access to recreational reading books in his

2

individual cell block via the "book carts."  Furthermore, even if he did not have access to these book carts, the plaintiff still cannot prove irreparable harm regarding his allegation that books have been removed in order to make a computer inventory.

In his next motion for preliminary injunction (doc. 47), the plaintiff alleges the defendants have stolen his legal documents and have placed him in "retaliatory solitary confinement."  The current motion arises out of an incident that occurred on December 4, 2011.  The plaintiff claims in his motion that he was "ministering to a severely mentally ill (dementia) inmate church member by trying to explain on the phone to member's wife how to bail member out of jail for $210" (motion ¶ 1).  The defendants submitted a response in opposition to the motion supported by affidavits from Officer Rochelle Wright and Michael Tice, the Captain of Security.

Per her sworn affidavit, Officer Wright was working in the recreation area on December 4th.   At approximately 2:30 p.m., during recreation time, the plaintiff attempted to obtain the pin number for another inmate with the last name Myles.  A pin number is given to each inmate and can be used to make requests for services within the CCDC.  Due to the sensitive nature of pin numbers, Officer Wright called inmate Myles to the officer's desk and advised him not to share his pin number with the plaintiff.  Officer Wright also observed the plaintiff at a kiosk machine with another inmate with the last name Ebdon. A kiosk machine is used to make purchases and to make requests for services.  In order to do these two things, an inmate must have his pin number.  Shortly thereafter, inmate Ebdon came to the officer's desk and requested his pin number in order to call his wife. Inmate Ebdon is an elderly, vulnerable inmate who appears to suffer from some form of dementia.  Instead of writing down inmate Ebdon's pin number, Officer Wright's fellow officer, Santanna, went with inmate Ebdon to the pay phone and assisted inmate Ebdon with placing the call.  Minutes later, Officer Wright observed the plaintiff on the phone that inmate Ebdon had been using while inmate Ebdon stood by looking confused. Officer Santanna went to the phone area and overheard the plaintiff saying to the person on the phone, "You can either pay North Charleston or you can pay me."  While this was occurring,

Officer Wright approached and ordered the plaintiff to return the phone to inmate Ebdon. Instead of handing the phone to inmate Ebdon, the plaintiff attempted to hang the phone up to end the call; however, Officer Wright was able to intervene and return the phone to inmate Ebdon before the call ended. Shortly thereafter, inmate Ebdon handed the phone to Officer Wright who spoke with inmate Ebdon's wife, Carol Ebdon. Carol Ebdon confirmed to Officer Wright that the plaintiff was trying to obtain money from her. The plaintiff was returned to his cell and Officer Wright contacted her supervising officer to make her aware of the incident (Wright aff. ¶¶ 8-23).

As a result of this incident, the plaintiff was placed in Unit A-1-B pending an investigation. Unit A-1-B is a segregation unit, but not a maximum security unit. Inmates may be placed in A-1-B to provide heightened protective custody if they pose a danger to other inmates. Once the plaintiff was transferred to Unit A-1-B, Officer Wright gathered the excessive paperwork in his cell, placed it in the plaintiff's property bag, and transferred it to Unit A-1-B to be kept with the plaintiff's personal property. Officer Wright testifies that she did not read any of the plaintiff's paperwork, but simply gathered it in order to transfer it to his new housing unit (Wright aff. ¶¶ 24-28).

The plaintiff claims that the paperwork from his cell was stolen. At the CCDC, each inmate is supplied with a gray box to store personal items in their cell. The personal items of an inmate in a cell must fit in this gray box. Any excess personal items that do not fit within the gray box are removed from the inmate's cell and stored with the inmate's personal property. The reason for this policy is to reduce the amount of items stored by an inmate within his cell, which in turn reduces safety risks within the detention center. An inmate may make a request to view the personal property stored outside his cell. When this request is made, the inmate is brought his personal property and allowed to either review it and give it back to the detention officers or swap it out for items in his gray box. However, all items kept by the inmate must be able to be stored within the gray box (Tice aff. ¶¶ 13-18). Based upon the foregoing, the plaintiff cannot demonstrate that he would likely

4

succeed on the merits of his claim that his paperwork was stolen, nor can he meet any of the additional requirements for a preliminary injunction.

In his most recent motion for preliminary injunction (doc. 51), which was filed on December 28, 2011, the plaintiff once again asks that the court order the defendants to provide him with a "total vegetarian (vegan) religious diet."  The undersigned addressed this same issue in a Report and Recommendation (doc. 32) entered on November 8, 2011, with regard to the plaintiff's previous motion for temporary restraining order.  For the same reasons cited in that report, this court recommends the motion for preliminary injunction be denied.

The plaintiff has not shown that he is entitled to injunctive relief.  Accordingly, the motions (docs. 40, 42, 47, 51) should be denied.

s/ Kevin F. McDonald
United States Magistrate Judge

January 5, 2012
Greenville, South Carolina